James **HEARS**, Petitioner

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE**, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 26, 2003.
Decided May 17, 2004.

Harry J. Cancelmi, Jr., Waynesburg, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

James Hears (Hears) petitions for review of the May 13, 2003 order of the Pennsylvania Board of Probation and Parole (Board) denying him administrative relief from the recalculation of his maximum term of expiry based upon his new criminal conviction and recommitment as a technical and convicted parole violator. Hears contends that he should have received credit toward his original sentence for the time he spent in custody prior to conviction and sentencing on the new crim-

inal charges because that time served exceeded the length of his new sentence.

On October 11, 2001, the Board re-paroled Hears[1] from his original 11-year state prison sentence with an original maximum term of expiry of June 15, 2004. On August 1, 2002, the Board issued a warrant to commit and detain Hears for violating the terms of his parole. On August 7, 2002, Hears was charged by the Wilkinsburg police with drug possession and manufacturing, and on August 20, 2002, he was arrested on these criminal charges. Hears did not post bail. As a result of the drug possession and manufacturing charge, Hears was recommitted as a technical parole violator on September 18, 2002, and he was sentenced to serve nine months backtime for violating the conditions of his parole.

On January 10, 2003, Hears' criminal drug manufacturing charge was withdrawn and his drug possession charge was amended to disorderly conduct, to which Hears pleaded guilty. For this conviction, Hears was sentenced to four days, which were the four days served from January 6, 2003 to January 10, 2003. Thereafter, on March 20, 2003, the Board recommitted Hears as a convicted parole violator to serve three months concurrently with the nine months of backtime imposed when he was determined to be a technical parole violator. The Board's recommitment order also recalculated the maximum term of expiry of Hears' original 11-year sentence. In determining a date of January 5, 2007,

the Board credited Hears for the nineteen days he was incarcerated on the Board's detainer from August 1, 2002. However, it did not give him credit for the time that he spent incarcerated, from August 20, 2002 through January 6, 2003, on both the Board's detainer and the new criminal charges.

On April 22, 2003, Hears filed a petition for administrative review of the Board's recalculation of his maximum sentence, asserting, in relevant part, that he should have received credit for all the time he spent incarcerated after the Board lodged its detainer on August 1, 2002. By a determination mailed May 13, 2003, the Board denied Hears' request for administrative relief. Hears then petitioned for this Court's review.

■ On appeal,[2] Hears contends that the Board erred by not giving him credit against his original sentence for the time he spent incarcerated from August 1, 2002 through January 6, 2003, because during this time he was incarcerated on drug charges, which were later withdrawn.[3] Hears' Brief at 8. In the alternative, Hears argues that the Board should have given him credit for all pre-sentence time spent incarcerated in excess of ninety days because he was convicted of disorderly conduct, an offense that carries a maximum sentence of ninety days incarceration.

In *Martin v. Pennsylvania Board of Probation and Parole*, 576 Pa. 588, 840 A.2d 299 (2003), our Supreme Court recently addressed the issue of what credit is

---

1. By way of background, Hears was initially paroled on March 8, 1999, and thereafter recommitted on July 18, 2000. On August 11, 2000 he was recommitted as a technical parole violator and sentenced to serve ten months backtime.

2. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether

an error of law was committed, or whether constitutional rights were violated. *McCloud v. Pennsylvania Board of Probation and Parole*, 834 A.2d 1210, 1212 n. 6 (Pa.Cmwlth.2003).

3. The Board contends that the charges were not "withdrawn" but, rather, "amended." The distinction is of no moment in this appeal.

owed to a paroled offender who is incarcerated while awaiting trial on a new charge. In *Martin,* the offender, James Martin, was on parole from his 10–year prison sentence[4] for robbery when, on May 30, 2000, he was arrested and charged, *inter alia,* with two counts of driving under the influence (DUI). On the same day, the Board lodged a detainer against him. Martin did not post bail. On July 19, 2001, Martin was convicted of the DUI charges and sentenced to 48 hours time served and one year of probation, to be served after serving his robbery sentence. On November 6, 2001, after a parole revocation hearing, Martin was recommitted to serve six months backtime.

Martin sought administrative relief to challenge the Board's recalculation of his maximum date of expiry, asserting that it failed to give him credit for all of the time he served on the Board's detainer. Specifically, Martin argued that because the DUI sentence imposed was 48 hours time served,[5] his original sentence should have been credited for the remaining time he spent in custody, which was from June 1, 2000 to July 19, 2001. The Board rejected Martin's request for relief, and this Court affirmed, relying on a line of cases[6] in which we construed *Gaito v. Pennsylvania Board of Probation and Parole,* 488 Pa. 397, 412 A.2d 568 (1980).[7] Our Supreme Court reversed.

■ The Supreme Court explained that one principle underpinning Pennsylvania's crediting statutes is that an indigent offender, being unable to furnish bail, should serve no less and no more time in incarceration than an offender who does post bail. *Martin,* 576 Pa. at 597, 840 A.2d at 304. Indeed, *Gaito* was intended to establish that an offender should receive credit on his original sentence for pre-trial incarceration where the conviction of the new charge does not lead to a *new* period of incarceration. The Supreme Court explained how the *Gaito* holding came to be misunderstood:

> The Gaito Court, in a footnote, attempted to impart the principle that credit should be applied equitably when there is no sentence of incarceration imposed. Unfortunately, the footnote principle was strictly, rather than equitably, applied to result in full credit for time

---

4. The original sentence for robbery was two-and-one-half to a maximum of ten years of imprisonment.

5. The DUI sentence also included one year of probation, but the probation did not start until after completion of the robbery sentence. Thus, the pre-trial time in custody could not be applied to his probation sentence.

6. The line of precedent began with *Rodriques v. Pennsylvania Board of Probation and Parole,* 44 Pa.Cmwlth. 68, 403 A.2d 184 (1979) and culminated in *Smarr v. Pennsylvania Board of Probation and Parole,* 748 A.2d 799 (Pa. Cmwlth.2000). In these cases, we expressed our understanding of *Gaito, i.e.,* that an offender may receive credit for pre-trial custody on new criminal charges, but he cannot receive credit for this time towards his original sentence.

7. In *Gaito,* the Supreme Court held that,

> [I]f a defendant is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall be credited against his original sentence. If a defendant, however, remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence.

*Id.* at 403–404, 412 A.2d at 571. The Court also noted that, "[i]t is clear, of course, that if a parolee is not convicted, or if no new sentence is imposed for that conviction on the new charge, the pre-trial custody time must be applied to the parolee's original sentence." *Id.* at 404, 412 A.2d at 571 n. 6.

served only when an offender was acquitted or the charges against him are *nolle prossed. See, e.g., Davidson v. Pennsylvania Bd. of Probation and Parole,* 667 A.2d 1206 (Pa.Cmwlth.1995). In cases where a fine or probation was imposed, the Board and the Commonwealth Court determined that, because a "sentence" was imposed, the convicted parolee was not entitled to credit for time served while awaiting disposition of those pending charges. *See, e.g., McCoy v. Pennsylvania Bd. of Probation and Parole,* 793 A.2d 1004 (Pa.Cmwlth.2002) (fine); *Gallagher v. Pennsylvania Bd. of Probation and Parole,* 804 A.2d 729 (Pa. Cmwlth.2002) (probation); *Smarr v. Pennsylvania Bd. of Probation and Parole,* 748 A.2d 799 (Pa.Cmwlth.2000).

*Martin,* 576 Pa. at 598–600, 840 A.2d at 305. However,

> [o]ur intent in articulating the footnote in *Gaito,* was that, "*if a parolee is not convicted, or if no new [period of incarceration] is imposed for that conviction on the new charge, the pre-trial custody time must be applied to the parolee's original sentence.*" Our use of the word "sentence" instead of "period of incarceration" inadvertently directed the

Board and the Commonwealth Court to the statutory definition of 'sentence,' which includes sentencing alternatives other than incarceration.

*Id.* (emphasis added). Under this clarification of *Gaito,*[8] credit for time spent in pre-trial custody will be allocated either to a paroled offender's original sentence or to his new sentence.

■ The Supreme Court further explained that its decision in *Martin* would not establish a "penal checking account."[9] It stated that where an offender is placed into confinement on both a Board detainer and on pending criminal charges, the offender will receive credit for that entire period of incarceration where:

(1) the new charges do not result in a sentence of incarceration;

(2) the new charges terminate in a *nolle prosse;* or

(3) the offender is acquitted on the new charges.

*Id.* at 605, 840 A.2d at 309.[10] Martin *was* sentenced to incarceration on the new charges, albeit only 48 hours. Nevertheless, the Supreme Court concluded that he was entitled to credit toward his original sentence for the remainder of his pre-custody time served. Thus, the Court held

---

8. The Supreme Court analyzes the cases decided prior to and after *Gaito* on the question of assigning credit for time offenders spend in pre-trial custody. *See Martin,* 576 Pa. at 598–605, 840 A.2d at 305–308.

9. *See, e.g., United States ex rel. Smith v. A.T. Rundle,* 285 F.Supp. 965 (E.D.Pa.1968) (wherein the court explained that time served under a prior invalid sentence should not be credited against a subsequent valid sentence and to do so would establish "penal checking accounts."). Since *Martin* does not establish a penal checking account, we believe that where an individual with no criminal history is incarcerated on criminal charges, and acquitted, the pre-trial time of incarceration may not be applied against a *future* criminal sentence.

10. The Supreme Court explained that indigency should not be the deciding factor for determining credit for time served. There are two reasons for awarding credit for pre-sentence incarceration even when the offender cannot post bail: (1) to eliminate the unequal treatment suffered by indigent defendants, who, because of their inability to post bail, may serve a longer overall confinement for a given offense than their wealthier counterparts; and (2) to equalize the actual time served in custody by defendants convicted of the same offense. *Martin,* 576 Pa. at 605–606, 840 A.2d at 309. Thus, the posting of bail is not determinative when deciding whether the offender receives credit for time served.

that "where an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence." *Id.*

■ We turn to the present case. Hears was incarcerated solely on the Board's detainer from August 1, 2002 through August 19, 2002, and the Board gave him credit for these nineteen days against his original sentence.[11] From August 20, 2002 through January 10, 2003, Hears was held on both the Board detainer and the new criminal charges. On January 10, 2003, Hears pled guilty to disorderly conduct and was sentenced to four days time served commencing January 6, 2003. Thus, Hears received four days credit, from January 6, 2003 through January 10, 2003, against his new sentence.

However, Hears did not receive credit for the four months and twenty days he spent incarcerated, from August 20, 2002, through January 6, 2003, on both the detainer and on the new criminal charge. Hears did not post bail, but this factor is irrelevant under *Martin*. Thus, we must vacate and remand the matter to the Board to recalculate Hears' maximum release date, giving him credit for the time he spent incarcerated on both the Board detainer and new criminal charge.

Accordingly, we vacate the Board's May 13, 2003, order and remand this matter to the Board for a recalculation of the maximum term of expiry of Hear's original sentence in accordance with this opinion.

### ORDER

AND NOW, this 17th day of May, 2004 the order of the Pennsylvania Board of Probation and Parole dated May 13, 2003, in the above captioned matter is hereby vacated, and this matter remanded for further proceedings in a manner consistent with the attached opinion.

Jurisdiction relinquished.

---

11. The Board contends that Hears should not have been given credit for these 19 days. Board Brief at 7. However, Hears was held solely on the Board's detainer during that time; thus, he was entitled to credit against his original sentence. *See Davis v. Cuyler,* 38 Pa.Cmwlth. 488, 394 A.2d 647 (1978) wherein this Court held that the offender is to be given credit against his original sentence for any time spent in custody solely as a result of the Board's detainer. The Supreme Court's decision in *Martin* does not change the principle that when an offender is held *solely* on the Board's detainer he is entitled to credit for that time against his original sentence. The decision in *Martin* expands the opportunity for credit to circumstances beyond those in *Davis.*